684 P.2d 1143

**STATE of New Mexico, Petitioner,**

v.

**Kirk CHAPMAN, Respondent.**

No. 15253.

Supreme Court of New Mexico.

July 30, 1984.

Paul Bardacke, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for petitioner.

Winston Roberts-Hohl, Santa Fe, for respondent.

**OPINION**

STOWERS, Justice.

The State of New Mexico petitioned this Court on a writ of certiorari to review the judgment of the Court of Appeals in *State v. Chapman*, Ct.App. No. 7299 (Filed November 23, 1983). The jury found the respondent competent to stand trial and the Court of Appeals reversed. The Court of Appeals determined that the State's evidence failed to establish that the respondent could rationally consult with his attorney with a reasonable degree of understanding or rationally perceive and comprehend the events in question.

The issue we decide on certiorari is whether the Court of Appeals substituted its judgment of the facts for that of the jury by finding that the facts did not support the jury's determination that the respondent could assist his attorney. We hold that the Court of Appeals improperly substituted its judgment for that of the jury, and therefore reverse.

The respondent was charged with the murder of his parents. In two prior proceedings, the respondent was adjudged mentally incompetent to stand trial. In late 1982, the State again moved to reevaluate the respondent's competency. After a jury trial on April 21, 1983, during which both sides presented expert testimony, the jury found the respondent competent to stand trial.

 Due to the prior adjudication of incompetency, the burden was on the State to go forward with the evidence and to overcome a presumption of incompetency by a preponderance of the evidence. *State v. Santillanes*, 91 N.M. 721, 580 P.2d 489 (Ct.App.1978). The State contends that it met the burden of proving the respondent's competency. The State further argues that the reversal of the jury decision was the result of the Court of Appeals' reweighing the evidence. The competency of an accused must be proven by a preponderance of the evidence rather than beyond a reasonable doubt, and substantial evidence must be presented to support such a determination. *See State v. Santillanes.* Substantial evidence consists of such relevant evidence which is acceptable to a reasonable mind. *State v. Armstrong*, 82 N.M. 358, 482 P.2d 61 (1971).

 In the present case, the jury was given a modified version of NMSA 1978, UJI Crim. 41.01 (Repl.Pamp.1982). UJI Crim. 41.01 has subsequently been revised and its present form is found at NMSA 1978, UJI Crim. 41.03 (Cum.Supp.1984). In this case, the jury was instructed as follows:

Evidence has been presented concerning the defendant's competency to stand trial. The State has the burden of proving by the greater weight of the evidence that the defendant is mentally competent to be tried.

A person is competent to stand trial if he:

1. Understands the nature and gravity of the proceedings against him;

2. understands he is being tried on a serious charge; and

3. is capable of assisting in his own defense.

As to this issue only, your verdict need not be unanimous. When as many as ten of you have agreed as to whether the defendant is competent to stand trial, your foreman must sign the proper form. [Instruction No. 2]

The State contends that the Court of Appeals improperly reweighed the evidence presented to the jury and then decided that there was insufficient evidence to show that the respondent met the third element required by former UJI Crim. 41.01. We agree. While conflicting expert testimony was presented at trial, the jury, as the fact finder, was not bound by, nor required to accept, the opinions of any of these experts. *State v. Victorian*, 84 N.M. 491, 505 P.2d 436 (1973). *See also* NMSA 1978, UJI Crim. 40.50 (Repl.Pamp.1982).

The record indicates that the State's expert witness, Dr. Egelman, testified that the respondent had a good recollection of the events surrounding the killing and the killing itself. Dr. Egelman stated that the reason the respondent gave for killing his parents was a delusion. Furthermore, Dr. Egelman acknowledged that the respondent suffered from a mental illness. However, Dr. Egelman also testified that this illness did not mean that the respondent was not competent to stand trial because he could aid his attorney and was aware of the charges pending against him. On cross-examination, Dr. Egelman maintained that the respondent's illness affected his

reason for acting where his family was concerned, but not his ability to assist his lawyer. A defense expert testified that the respondent understood the charges and was aware of the roles of individuals in court proceedings; however, the respondent was unable to properly consult with and assist counsel. The conflicting expert testimony presented in this case does not change the right of the jury to accept or disregard such testimony. The jury was not required to accept the opinion of any of these experts. *See State v. Victorian.*

 In concluding that the delusions suffered by the respondent rendered him unable to assist his attorney in formulating a rational defense, the Court of Appeals impermissibly substituted its own judgment for that of the jury. In *State v. Lopez,* 91 N.M. 779, 780, 581 P.2d 872, 873 (1978), this Court stated:

> In reviewing the present case the appellate court should only examine the evidence to determine whether the trial court abused its discretion. The reviewing court cannot substitute its judgment for that of the trial court (citations omitted).

Similarly, the appellate court may not substitute its judgment for that of the jury. *State v. Martinez,* 95 N.M. 795, 626 P.2d 1292 (Ct.App.1979); *State v. Elam,* 86 N.M. 595, 526 P.2d 189 (Ct.App.), *cert. denied,* 86 N.M. 593, 526 P.2d 187 (1974). In the present case, the Court of Appeals erred in substituting its judgment of the facts for that of the jury by finding that the facts of this case did not support the jury's determination that the respondent could assist his attorney. Moreover, the verdict of the jury is supported by substantial evidence.

The Court of Appeals is reversed. The jury's determination that this respondent is competent to stand trial is hereby affirmed.

IT IS SO ORDERED.

FEDERICI, C.J., SOSA, Senior Justice and RIORDAN, J., concur.

WALTERS, J., dissents.

WALTERS, Justice (dissenting).

I do not agree with the majority opinion. It was necessary for the intermediate court to review the evidence in order to determine whether the State had met the burden of substantial evidence on the third element of competency, as outlined in the opinion of the Court of Appeals. (I incorporate that opinion, at the end of this dissent, as a part of my dissent.)

The evidence produced was not "acceptable to a reasonable mind" (to use the majority's definition of substantial evidence) when it was uncontradicted that defendant's entire capability of communicating with his attorney centered upon his delusional perception of the surrounding facts. How could defendant assist in making "a rational defense" (*State v. Mabry,* 96 N.M. 317 at 322, 630 P.2d 269 at 274 (1981)), when the only evidence of his awareness regarding the crime was that he was protecting a non-existent eight-year-old daughter from being sold by his parents into white slavery, and was paternally obligated to do so?

Dr. Egelman did testify that defendant was able to communicate with counsel and (thus) was able to assist in his defense. To the extent that defendant could verbalize his version of events, of course he could communicate. But mere communication is of questionable value in preparing a defense if the basis for the communication is delusional and the communication itself is the product of a mind afflicted by mental illness. That evidence, from an intellectually fair as well as a legal viewpoint, is not sufficient to establish as a fact that defendant was capable of assisting in his own defense. Without that contradictory and paradoxical testimony, the jury had *no substantial evidence* upon which to satisfy that third element of competency. The Court of Appeals did not reweigh the evidence; it simply recognized it as "unacceptable to a reasonable mind" and, therefore, as insubstantial.

I would affirm the Court of Appeals in its reversal for failure of necessary proof.

I therefore dissent from the majority opinion.

APPENDIX TO DISSENT

No. 7299.

Court of Appeals of New Mexico.

Nov. 23, 1983.

OPINION

DONNELLY, Judge.

This interlocutory appeal arises out of a jury determination that defendant is competent to stand trial on two charges of first degree murer. On appeal, defendant raises three issues: (1) lack of substantial evidence to support a finding of competency; (2) failure to determine incompetence as a matter of law; and (3) failure to adequately instruct the jury as to competency. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Gross*, 98 N.M. 309, 648 P.2d 348 (Ct. App.1982).

FACTS

Defendant was charged with two counts of murder arising out of the killing of his parents on February 19, 1979. At arraignment, defendant stood mute and the trial court entered a plea of not guilty on his behalf. Subsequently, defendant filed notice of intent to plead the defense of insanity and the trial court ordered that he be transferred to the State Hospital for evaluation to determine both defendant's competency to stand trial and his sanity at the time of the commission of the alleged offenses. Defendant contended the killing of his parents was done in self-defense.

In two prior proceedings, defendant has been adjudged mentally incompetent to stand trial. On August 15, 1979, based upon the results of the forensic evaluation, the trial court found that defendant was incompetent to participate in trial or to assist his attorney in his own defense. Defendant was committed to the State Hospital until such time as he was adjudged competent to be tried on the pending charges. In June 1980, on motion of the State to reevaluate defendant's mental condition, the trial court impaneled a jury to determine defendant's present competency. At the close of the evidence, the court removed the case from the jury, finding that the evidence presented by the State did not raise a reasonable doubt as to the incompetency of defendant, and concluded that he was not competent to stand trial. Defendant was recommitted to the State Hospital.

In the latter part of 1982, the State again moved to have defendant's mental competency reevaluated and for further judicial determination of his competency to stand trial. On April 21, 1983, by order of the trial court, a jury trial was convened to determine the issue of defendant's competency. Upon completion of the trial, the jury found the defendant competent to stand trial and the trial court filed an order thereon.

DENIAL OF REQUESTED INSTRUCTIONS

Defendant submitted twelve requested jury instructions including a modified version of NMSA 1978, UJI Crim. 41.01 (Repl. Pamp.1982) containing the test for determination of defendant's competency to stand trial. Each of defendant's requested instructions was refused. The trial court gave a modified version of UJI Crim. 41.01 as requested by the State. On appeal, defendant asserts as error the court's denial of his requested Instructions Nos. 1, 2 and 3. Requested Instructions Nos. 1 and 3 stated that, in order for the jury to find defendant competent to stand trial, he must be capable of assisting his attorney in presenting a "rational" defense. Additionally, defendant's requested Instruction No. 2, defined the term "rational." We hold the trial court correctly denied defendant's requested jury instructions.

Much confusion has been generated concerning the legal criteria necessary to de-

termine the competency of an accused to stand trial. The legal criteria for determining a defendant's mental competency to be tried has undergone significant evolution in New Mexico. In adopting UJI Crim. 41.01, a three-part test was enunciated for the determination of the present competency of a defendant. As set out in this instruction, a person is deemed competent to stand trial if he: (1) understands the nature and gravity of the proceedings against him; (2) understands he is being tried on a serious charge; and (3) is capable of assisting in his own defense.

The test of competency outlined in UJI Crim. 41.01, is declarative of a lesser standard of proof as to a defendant's competency to stand trial, than the standard articulated by the New Mexico Supreme Court in decisions decided prior to the adoption of the Uniform Criminal Jury Instructions in June, 1975. *See State v. Ortega*, 77 N.M. 7, 419 P.2d 219 (1966); *State v. Upton*, 60 N.M. 205, 290 P.2d 440 (1955); *State v. Folk*, 56 N.M. 583, 247 P.2d 165 (1952).

In the earlier decision of *State v. Upton*, the court stated:

> The proper inquiry [of defendant's competency to stand trial] is:
>
> "Has the defendant capacity to understand the nature and object of the proceedings against him, to *comprehend his own condition* in reference to such proceedings, *and to make a rational defense?*" Weihofen, Mental Disorder as a Criminal Defense, at page 431. * * *

60 N.M. at 211, 290 P.2d at 443. [Emphasis added.]

After the adoption of UJI Crim. 41.01, the requirement that the defendant "comprehend his own condition" was eliminated and in its place the requirement that he "understand he is being tried on a serious charge; and be capable of assisting in his own defense" was substituted.

The original committee comments to UJI Crim. 41.01 noted that "[t]he test set forth * * * in *State v. Ortega* * * * and *State v.*

*Folk* * * * is more stringent than the federal test." By adopting UJI Crim. 41.01, the Supreme Court brought New Mexico under the standard set out in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In *Dusky*, the Supreme Court stated the " 'test [of competency to stand trial] must be whether he has sufficient present ability to consult with his lawyer with a *reasonable degree of rational understanding*—and whether he has a rational as well as factual understanding of the proceedings against him.' " [Emphasis added.]

As noted in 27 Am.Jur. Trials § 43 at 85–86 (1980):

> The standard of competency to stand trial has been referred to as the "understand-and-assist test". It has been accepted in almost every jurisdiction. The "test", as set forth by the Supreme Court of the United States [in *Dusky* ] is:
>
> * * * *whether* (the defendant) *has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.*
>
> Though this standard is required only in federal cases, most states have adopted it as a result of numerous lower federal court decisions establishing it as the minimum standard to be applied under the Constitution.
>
> The supreme court test places a strong emphasis on the requirement of "rationality". It appears that the *defendant must not only have a recollection of events, but must be able to assess and appraise the nature of the proceedings. Further, it appears to require that he be able to assist counsel in jury selection, coherently testify in his own behalf and follow the presentation of evidence.*

[Emphasis added.]

Subsequent to defendant's hearing herein, UJI Crim. 41.01 was further amended

by our Supreme Court effective October 1, 1983. *See* NMSA 1978, UJI Crim. 41.03 (Supp.1983). The adoption of UJI Crim. 41.03 requiring proof that an accused understand "the significance" of the proceedings against him and have a "factual understanding of the criminal charges," clarifies and highlights the requirement that a defendant possess a reasonable degree of rational understanding of the charges, the trial process, and be able to assist his trial counsel. Instructions contained in UJI Criminal and approved for use by the New Mexico Supreme Court have the effect of implicitly superseding prior case law. *See State v. Padilla*, 90 N.M. 481, 565 P.2d 352 (Ct.App.1977). Under former UJI Crim. 41.01, and the newly drafted UJI Crim. 41.03, the test of a defendant's competency to stand trial, rests upon the requirement of a reasonable degree of rationality as defined in *Dusky*.

The trial court did not err in refusing defendant's requested jury instructions. The instructions cited on appeal focus on the term "rational" and its definition. "Rational" means to act with reason and understanding. Webster's Third New International Dictionary 1885 (1961). This definition is embodied in UJI Crim. 41.01 by the requirement that competency be shown by proof that the accused "understand" the nature of the proceedings, the seriousness of the charges and be capable of assisting in his own defense. The term "rational" is a synonym for the requirement that the accused "understand." Where a uniform jury instruction correctly states the law, it is improper to modify such instruction, nor is it necessary to paraphrase such instruction. *See State v. Padilla.*

## SUFFICIENCY OF EVIDENCE

Defendant's first and second points on appeal challenge both the sufficiency of the evidence to support the jury's determination of competency and the failure of the trial court to determine his incompetence as a matter of law. We discuss these issues jointly.

It is established law that a person cannot be tried or adjudged to punishment while such person is incompetent. *State v. Roybal*, 76 N.M. 337, 414 P.2d 850 (1966); *see State v. Folk.* Competency to stand trial is a fundamental requirement of criminal justice. *People v. Turner*, 88 Ill.App.3d 793, 44 Ill.Dec. 59, 410 N.E.2d 1151 (Ct.App. 1980); *State v. Eldridge*, 17 Wash.App. 270, 562 P.2d 276 (1977). Decisional precedent, court rules and statutory procedures all provide safeguards against the prosecution of incompetent persons for alleged criminal offenses. NMSA 1978, Crim.P.R. 35(b) (Cum.Supp.1983); NMSA 1978, § 31–9–1; *State v. Santillanes*, 91 N.M. 721, 580 P.2d 489 (Ct.App.1978); *State v. Upton.* The root for such law is embedded in constitutional due process requirements. *See* N.M. Const. art. II, § 18; U.S. Const. amend XIV, § .1; *see also Dusky v. United States; Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

The issue of defendant's competency to stand trial may be raised by either party or upon the court's own motion at any stage of the proceedings. NMSA 1978, § 31–9–1; *see also Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Determination of defendant's competency is a factual issue unless the trial judge determines as a matter of law there is no reasonable doubt as to defendant's competency or lack thereof. Crim.P.R. 35(b). Under the latter rule, if a reasonable doubt exists as to the defendant's competency to stand trial, the court may, without a jury, either determine the issue, or in its discretion, submit the issue itself to a jury other than the trial jury. *See also State v. Noble*, 90 N.M. 360, 563 P.2d 1153 (1977). A hearing by the factfinder to determine a defendant's competency to stand trial is constitutionally required where a reasonable doubt exists on the issue. *Moore v. United States*, 464 F.2d 663 (9th Cir.1972).

An accused is presumed to be competent to stand trial and he has the burden of proving his lack of competence by a pre-

ponderance of the evidence. *State v. Santillanes; see also State v. Armstrong,* 82 N.M. 358, 482 P.2d 61 (1971); *State v. Ortega.* Where, however, as in the instant case, an accused has been previously adjudicated to be incompetent to stand trial, a presumption exists that the defendant continues to remain incompetent. The burden is then upon the prosecution to go forward with evidence to establish defendant's competency. In such case, competency must be established by a preponderance of the evidence.[1] *State v. Santillanes,* 91 N.M. at 723, 580 P.2d at 491; *see also Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983).

Although the competency of an accused to stand trial does not have to be established beyond a reasonable doubt, substantial evidence must be presented to support such determination. *See* UJI Crim. 41.01; *see also State v. Santillanes.* Substantial evidence is " 'relevant evidence acceptable to a reasonable mind.' " (Citations omitted.) *State v. Armstrong,* 82 N.M. at 360, 482 P.2d at 63.

The touchstone for competency to stand trial, as discussed earlier herein, is whether defendant has sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him. *Cf. State v. Mabry,* 96 N.M. 317, 630 P.2d 269 (1981); *see also State v. Sena,* 92 N.M. 676, 594 P.2d 336 (Ct.App. 1979).

The New Mexico Supreme Court in *Mabry* (decided after the adoption of UJI Crim. 41.01), reiterated the test laid down in decisions antedating the adoption of UJI Crim. 41.01. In *Mabry,* the court cited with approval the rule enunciated in *Upton,* which states that a "defendant is competent to stand trial if he has the capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to the proceedings, and to make a rational defense." *State v. Mabry,* 96 N.M. at 322, 630 P.2d at 274.

As stated earlier, the adoption of UJI Crim. 41.03, further modifying prior UJI Crim. 41.01, clarified the test for the determination of the competency of an accused to stand trial and brought New Mexico more clearly within the ambit of the "understand and assist" test set out in *Dusky.* It is the ability to consult rationally with counsel that is an essential element of competency to stand trial.[2]

The determination of whether a defendant is presently competent is a factual issue, with each case to be determined on its own facts. *See Drope v. Missouri; McKinney v. State,* 566 P.2d 653 (Alaska 1977). The trial court submitted a modified version of UJI Crim. 41.01 to the jury. The modified instruction correctly recited that the burden of establishing that defendant was mentally competent was upon the State. This instruction detailed the three-part test for proof of competency.

Defendant, while conceding that substantial evidence existed to support the first two criteria recited in UJI Crim. 41.01, argues that there was no competent evidence to support the jury's verdict as to the third requirement imposed by the instruction, i.e., that defendant was capable of assisting in his own defense. We agree.

---

1. Under both UJI Crim. 41.01 and UJI Crim. 41.03, the instructions refer to the requisite burden of proof to establish competency. The use notes are silent as to any requirement that the trial judge instruct the jury as to a definition of "preponderance of the evidence." A requirement that the jury be instructed as to the definition of the applicable burden of proof exists in all other jury trials, both criminal and civil. *Compare* NMSA 1978, UJI Civ. 3.6 (Repl.Pamp.

1980), and NMSA 1978, UJI Crim. 40.60 (Repl. Pamp.1982).

2. Mickenberg, *Competency to Stand Trial and the Mentally Retarded Defendant: The Need for a Multi-Disciplinary Solution to a Multi-Disciplinary Problem,* 17 Cal.W.L.Rev. 365, 383–86 (1981); Gobert, *Competency to Stand Trial:* a Pre-And-Post-*Jackson* Analysis, 40 Tenn.L.Rev. 659 (1973); Note, *Incompetency to Stand Trial,* 81 Harv.L.Rev. 454, 459 (1967).

During the second jury trial on defendant's competency, the State presented the testimony of Dr. Arthur Egelman, an Albuquerque psychiatrist. Dr. Egelman stated it was his opinion that defendant was competent to stand trial on the pending charges.

Dr. Egelman further testified that in his opinion defendant suffered from a mental illness consisting of paranoid schizophrenia and from delusions involving his parents and family. These delusions, he stated, had remained virtually constant over the four-year interval following the commission of the crimes. During an interview with defendant, Dr. Egelman stated defendant told him he believed that as a baby he had been traded at the hospital with the child of another family, that members of his family had been conspiring to kill him, that his father had twice shot him in the head, and that on one occasion his brother had stabbed him in the chest with a knife. Defendant believed he had an eight-year-old daughter, whom his family was attempting to sell into a life of prostitution. The doctor stated there was no evidence that defendant in fact had a daughter or that any of his delusions were based on fact. Acting on these delusions, defendant stated he had driven from Dallas to Roswell to his parents' office and killed them in "self-defense."

Dr. Egelman stated that in his opinion despite the existence of defendant's mental illness and delusions, this did not affect his ability to understand the role of the court officers, the nature of the charges, or possible consequences of a trial. Dr. Egelman stated that defendant "does not see things as we see them in relationship with his family ... the delusions are concerned specifically with his family."

Dr. Egelman testified that a problem did exist with respect to defendant's relationship with his attorney in that defendant's mental illness led him to believe that he had killed his parents in self-defense, while his attorney, instead, felt defendant lacked present competency to stand trial or to rationally understand the tenuousness of his claim of self defense. The defendant informed his attorney he was opposed to asserting the defense of insanity. Nonetheless, it was Dr. Egelman's opinion that defendant had no problem in speaking with his counsel and was able to communicate his delusions to his lawyers. Dr. Egelman stated that defendant's mental condition was basically unchanged since 1979, when he had originally been adjudged to be incompetent.

Where a reasonable doubt exists as to the competency of a defendant to stand trial defendant's attorney has an obligation to convey this fact to the court. *C.f. Evans v. Kropp,* 254 F.Supp. 218 (E.D.Mich. 1966) (defense attorney's failure to raise the issue of incompetency denied defendant effective assistance of counsel). The trial judge in turn has a duty to determine defendant's present competence. NMSA 1978, § 31–9–1; Crim.P.R. 35(b); *see also* Koch, *Imposition of the Insanity Defense on an Unwilling Defendant,* 11 N.M. Trial Law. 117 (1983); *Whalem v. United States,* 346 F.2d 812 (D.C.Cir.), *cert. denied,* 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965).

Under cross-examination, Dr. Egelman said he did not know the legal standards for determining competency of an accused to stand trial, and that his opinion as to defendant's mental condition was limited solely to a finding that he was medically competent. He stated also that he felt defendant was capable of relating the pertinent facts concerning the case to his attorney, with the limitation that much of what defendant believed regarding the commission of the offenses was based upon defendant's own version of reality.

The defense presented the testimony of two psychologists, Dr. Elliott J. Rapoport, a private practitioner, and Dr. Veronica Thomas, a member of the forensic evaluation team. Both Dr. Rapoport and Dr. Thomas testified that defendant was men-

tally ill and incompetent to stand trial. On appeal, a reviewing court must view the evidence in a light most favorable to support the verdict. All conflicts in the evidence are resolved in favor of the successful party, and we view all reasonable inferences in support of the judgment. *State v. Tovar*, 98 N.M. 655, 651 P.2d 1299 (1982). However, even when judged by this standard, the evidence outlined above is insufficient to support a finding that defendant is legally competent to stand trial. The State's expert witness admitted defendant suffered from a "delusional system" involving his family. The evidence was uncontradicted that these delusions affected defendant's ability to make rational judgments concerning his perception of his family and the events in issue.[3] These delusions relate directly to the offenses charged. The test for determination of competency to stand trial necessitates a particularized inquiry into the ability of the accused to rationally understand and assist. The State's evidence failed to establish that defendant could rationally consult with his attorney with a reasonable degree of understanding or rationally perceive and comprehend the events in question.

The jury determination of competency is reversed and the cause remanded to the trial court pursuant to Section 31–9–1 and Crim.P.R. 35(b), until such time as a showing of defendant's mental competency to stand trial may be established. The State is free to seek redetermination of defendant's competency to stand trial when in its discretion appropriate evidence exists to support such action. *See People v. Gillings*, 39 Colo.App. 387, 568 P.2d 92 (1977).

Reversed and remanded for proceedings consistent herewith.

IT IS SO ORDERED.

NEAL and BIVINS, JJ., concur.

***

**3.** *Cf. State v. Khan*, 175 N.J.Super. 72, 417 A.2d 585 (1980) wherein the defendant, accused of murder, maintained he acted in self-defense despite psychiatric opinion evidence disclosing that defendant's belief that he acted in self-defense, and the facts cited to support that defense, had no basis in reality and were a product of a paranoid delusion. Remanding the case for further hearing on defendant's competency to stand trial, the New Jersey Court noted that defendant's actions arising from a paranoid delusion related not only to the issue of defendant's insanity at the time the offense was committed but also "bears upon the matter of defendant's competency to stand trial." 417 A.2d at 591.